UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADRIANNA GUILLEN, A MINOR BY HER GUARDIAN AD LITEM CONSUELO VARELA, and CONSUELO VARELA, INDIVIDUALLY,<br><br>Plaintiffs,<br><br>v.<br><br>SIX FLAGS GREAT ADVENTURE, LLC, and SIX FLAGS THEME PARKS, INC., et al.,<br><br>Defendants. | Civ. No. 14-2091 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Adrianna Guillen[1], injured her hand while preparing to ride the Kingda Ka roller coaster at the Six Flags Great Adventure amusement and theme park. The complaint alleges that the owners and operators of that theme park, defendants Six Flags Great Adventure, LLC and Six Flags Theme Parks, Inc. (collectively, "Six Flags"), were negligent in failing to provide for theme park visitors' safety and in failing to uphold their duty of care to those visitors. Now before the court is Six Flags' motion (1) to preclude Guillen's proposed liability expert from testifying and (2) for summary judgment. (ECF No. 21) For the reasons expressed below, the motion will be denied.

---

[1]   Guillen was a minor at the time suit was commenced, but is no longer. Her mother, Consuelo Varela, brought the action in Guillen's name and in her own name individually to recover medical costs and expenses. Varela was dismissed as a plaintiff by stipulation and order on August 7, 2014, and all claims in her name were assigned to her daughter. (ECF No. 14)

1

## I. BACKGROUND

On August 27, 2012, Guillen visited the Six Flags Great Adventure amusement and theme park in Jackson, New Jersey. When she boarded the Kingda Ka roller coaster ride, she placed her hand on the shoulder of the seat in front of her. When the passenger in that seat lowered the safety harness, Guillen's hand was caught and crushed.

Guillen filed a complaint in the Superior Court of New Jersey on December 11, 2013. (ECF No. 1-1) Count 1 of the complaint alleges that Six Flags was negligent in breaching its duty of care to visitors of the amusement park. (*Id.*, Count 1, ¶¶ 7–9) Count 2 asserts a cause of action for medical care and expenses sustained as a result of Guillen's injuries. (*Id.*, Count 2, ¶ 4) Six Flags removed the action on April 3, 2014, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1)

Discovery commenced. Guillen retained Gary L. Montroy, H.H.S., as a liability expert, and Montroy submitted an expert report on February 20, 2013. (ECF No. 22-3, Ex. D) After conducting an on-site inspection of the ride, Mr. Montroy submitted a modified report on October 9, 2014. (*Id.*, Ex. E)

On December 17, 2014, Six Flags filed a motion to preclude Mr. Montroy's expert report and testimony, as well as a motion for summary judgment. (ECF No. 21) Guillen opposed the motion on January 5, 2015, and Six Flags filed a reply on January 7, 2015. (ECF Nos. 22, 23)

## II. JURISDICTION

The Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the dispute is between citizens of different states and the amount in controversy exceeds $75,000.

## III. MOTION TO PRECLUDE PLAINTIFF'S EXPERT REPORT

### a. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides:

2

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
> a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) the testimony is based on sufficient facts or data;
> c) the testimony is the product of reliable principles and methods; and
> d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). The requirement that an expert have specialized knowledge has been interpreted liberally. *See Paoli*, 35 F.3d at 741. Thus, "a broad range of knowledge, skills, and training qualify an expert." *Id.* An expert will not be excluded merely because the proposed expert does not have the "most appropriate" degree or training. *See id.* A reliable opinion is "based on 'the methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Id.* at 742 (citing *Daubert*, 509 U.S. at 590). An expert's testimony will be deemed sufficiently reliable if there are "good grounds" for the expert's belief. *Id.* The opinion must also fit the issues of the case, in that it is relevant and assists the trier of fact. *See id.* at 742–43.

### b. Analysis

Six Flags objects to Mr. Montroy's testimony on two grounds. First, Six Flags contends that Mr. Montroy's testimony should be struck because he does not possess background qualifications in the amusement park industry. Second, Six Flags argues that Mr. Montroy's testimony is improperly based solely on his personal belief.

As to the first point, an expert's qualifications need not match perfectly with the issues presented in a case. The expert must however, explain how his experience leads to the conclusions contained in his report and how that

experience is reliably applied to the facts. Here, Mr. Montroy was engaged to "review the applicable regulations dealing with amusement rides promulgated by the State of New Jersey which affect the accident." (ECF No. 21-8, Ex. F at p. 4) In his report, Mr. Montroy presents his qualifications as "more than 40 years of experience in the field of engineering, building code, property maintenance code and fire code enforcement." (ECF No. 21-8, Ex. F at p. 7) His curriculum vitae sets forth extensive experience in construction and building code compliance and inspection. (ECF No. 21-9) In his deposition, Mr. Montroy explained that through his line of work, he has been associated with the Department of Community Affairs and familiar with the Uniform Construction Code, that he was aware that the department had regulations governing inspection of amusement rides, and that he began his research by looking at those regulations. (ECF No. 22-3 at 106:9–18, 108:8–10) Mr. Montroy maintains that he reviewed all of the regulations relating to the operation and maintenance of amusement rides in the Department of Community Affairs regulations. (*Id.* at 110:2–10) Although Mr. Montroy lacks direct amusement park expertise, I find that his experience in building and construction inspection and code and regulation interpretation renders him sufficiently qualified to provide an expert opinion on New Jersey regulations related to amusement rides. I also find that his deposition testimony sufficiently explains how his expertise led to the conclusions contained in his report.

Six Flags argues with some force that Mr. Montroy's expertise is not directly applicable; he has no particular expertise in amusement park rides, and it appears that he made no comprehensive study of the potentially applicable regulations. Such considerations, if accepted by a fact finder, might well render such testimony unpersuasive. I find, however, that these considerations go to the weight, not the admissibility, of this opinion testimony.

Six Flags' second objection – that Mr. Montroy's opinion is improperly based solely on personal opinion – also is most properly considered as a matter of weight, not admissibility. Having been retained to examine the regulations on amusement rides, Mr. Montroy opined that the relevant regulation is the

4

Carnival-Amusement Ride Safety Act, N.J.S.A. 5:3-31 et seq. and N.J.A.C. 5:14A-1.2. (ECF No. 21-8, Ex. F at p. 4) Based on his review of these regulations, Mr. Montroy provided three conclusions:

> (1) The regulations adopted by the State of New Jersey clearly make the use of restraints the responsibility of the ride operator and the assistant operator;
>
> (2) The owner did not properly train the ride operator or the assistant operator in the proper placement of the restraint bar which is what caused the accident to occur and the damage to Ms. Guillen;
>
> (3) No announcement was made to direct the riders when it is appropriate to lower the bar insuring that the riders were safely seated prior to lowering the restraining bar.

(*Id.* at p. 7) However, in his deposition, Mr. Montroy admitted that the first two conclusions were irrelevant to the case in light of the fact that Guillen changed her story from saying that a ride operator pulled the harness down to contending that it was a fellow passenger in the seat in front of her who pulled down the harness on her hand. (ECF No. 21-10, Ex. G, 117:2–10) Thus, Mr. Montroy's previous opinions (1) that use of restraints is the responsibility of the ride operator and assistant operators and (2) that the owner did not properly train ride operator and assistant operators in proper placement of the restraint, became irrelevant to the facts of the case.

Mr. Montroy therefore acknowledges that the only opinion he is giving in this case is number (3): that Six Flags should have warned patrons to wait until everyone was seated before lowering the restraining bar. (*Id.* at 117:11–22) Mr. Montroy's belief is that "the ride should have been operated with a notification for the patrons not to lower the bar until everyone was seated." (*Id.* at 117:17–19) True, Mr. Montroy stated that this was his "personal opinion." (*Id.* at 117:20–21) In context, however, it is clear that he based his opinion on his experience with inspection codes and regulations and his independent review of the accident site.

5

Once again, it must be said that Six Flags has cogent arguments on its side. Mr. Montroy testified that there was no manufacturer's specification, industry regulation, industry standard, or Department of Community Affairs regulation that specifically mandated a notice to patrons to wait to lower the bar until everyone was seated. (*Id.* at 125:3–14) The opinion, then, may be characterized as merely one expert's interpretation, and its foundations may be attacked on cross-examination. But again, these are matters for the finder of fact, not bars to admissibility.

I therefore deny the motion *in limine,* and will consider Mr. Montroy's opinion to be part of the record for purposes of summary judgment.

### IV.   MOTION FOR SUMMARY JUDGMENT
#### a. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that

creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

### b. Analysis

Six Flags, recognizing the standards for summary judgment summarized above, does not attempt to gainsay every factual allegation of the plaintiff. Rather, it presses a more focused challenge to plaintiff's case as a matter of law.

Guillen has sued Six Flags for negligence. Six Flags replies, however, that Guillen's claim is properly understood as one under the New Jersey Products Liability Act ("NJPLA"), which may be brought only against the designer, manufacturer or seller of a product. That being so, says Six Flags, it is an inappropriate defendant, because it was not the designer, manufacturer or seller of the Kingda Ka roller coaster ride. No one disputes the minor premise of the argument: Six Flags did not design, manufacture, or sell the ride equipment. It is the major premise of Six Flags' argument — *i.e.*, that this is an action under the Products Liability Act — that is misplaced.

Guillen alleges that Six Flags was the operator of the Six Flags Great Adventure amusement and theme park and that as such, Six Flags owed a duty of care to visitors of the park. The Kingda Ka roller coaster was one of the amusement rides at the park and was staffed by Six Flags employees. The established practice was that the riders, not the employees, would lower the safety harness before each ride began. The central claim here (winnowed in the course of discovery) is that Six Flags was negligent in failing to provide proper instructions to the riders of the Kingda Ka roller coaster that they should wait until all patrons were seated before lowering the safety harness. Guillen alleges that, by failing to instruct riders to wait until all riders were seated before lowering the harness, Six Flags breached its duty of care and proximately caused the injuries to Guillen's hand.

The claim is clearly one of negligence. The plaintiff is the master of her complaint, and Guillen has brought this action as a claim of negligence against Six Flags, as she was entitled to do. Should it turn out that the manufacturer, rather than Six Flags, was at fault, then so be it, but Six Flags cannot turn this action into something else for purposes of summary judgment. Six Flags is a proper defendant to the actual claim brought by Guillen, as opposed to the one it hypothesizes in its motion.

Six Flags cites cases such as *Doerflein v. Six Flags Great Adventure*, No. A-0522-04T2, 2006 WL 392980, at *3 (N.J. Super. Ct. App. Div. Feb. 22, 2006). *Doerflein*, however, merely held that an amusement park (Six Flags, as it happens) was excluded from the scope of the NJPLA because it did not manufacture or sell the product. It did not hold that the plaintiff was barred from suing the amusement park owner for the owner's own negligence.

Six Flags' heads-I-win, tails-you-lose position is that this must be an NJPLA case, and that the NJPLA does not apply as a matter of law. That is very close to a claim that there is no such thing as an action against an amusement park based on injuries sustained on a ride. That simply is not so; there is such a cause of action, and it ordinarily presents a jury question. *See generally Kahalili v. Rosecliff Realty, Inc.*, 141 A.2d 301 (N.J. 1958).

8

In discussing Six Flags' remaining contentions, then, I treat the action as one for negligence. Under New Jersey law, to prove negligence, a plaintiff must establish: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty of care; and (3) that the defendant's breach proximately cased the plaintiff's injury. *See Endre v. Arnold*, 692 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1997).

Six Flags contends that it is entitled to summary judgment because Guillen has failed to provide evidence of a duty of care on the part of Six Flags and a breach of that duty. These arguments are, however, not very well explained or supported. Six Flags appears to argue that there is no duty of care or a breach of that duty because Guillen has not proven that any industry standard mandates that all riders be seated before harnesses are closed. Six Flags also argues that it was not reasonably on notice of the danger that in fact materialized. It cites no particular evidence to the contrary, but contends that the plaintiff has not met her burden of proof.

A breach of industry standards is one way of demonstrating negligence, but it is not the only way. The standard of care is flexible and fact-dependent, and negligence might be inferred from "all the circumstances," including the conduct of Six Flags and the physical layout of the ride. *See Kahalili*, 141 A.2d at 307; *see also id.* at 305–06 (it was for the jury to decide whether the safety bar of a roller coaster was an adequate safeguard and whether ejection from the car was a risk reasonably foreseeable to the amusement park operator, analogizing to a common carrier's high duty of care). I find that it is a jury question whether Six Flags was negligent in delegating to customers the job of pulling down the safety harness, while failing to instruct them as to how to do so safely. Notice, too, is a factual issue. The riders were pulling down a bar that was capable of causing harm to someone in its path. It is a factual question

whether the operator knew or should have known that permitting patrons to do so without safety instructions posed a danger.[2]

I find that Six Flags has not met its burden of demonstrating that no genuine issue of material fact exists. Accordingly, I deny Six Flags' motion for summary judgment.

## V.     CONCLUSION

For the reasons set forth above, Six Flags' motion to preclude Guillen's expert report and testimony is **DENIED**. Six Flags' motion for summary judgment is likewise **DENIED**. An appropriate order follows.

Dated:  December 29, 2015

_____
HON. KEVIN MCNULTY, U.S.D.J.

---

[2]     Indeed, where a business chooses a self-service "mode of operation," the requirement of notice may be relaxed as to dangers created by the customers' serving themselves. *Cf. Craggan v. IKEA USA*, 752 A.2d 819, 823–24 (N.J. Super. Ct. App. Div. 2000) (citing *Wollerman v. Grand Union Stores*, 221 A.2d 513, 514 (N.J. 1966)).